## SHAW *v.* THE READING AND THE DAVID SMITH.[1]

*(District Court, E. D. Pennsylvania. October 1, 1888.)*

COLLISION—BETWEEN STEAMER AND TOW—LIABILITY.

In a collision between a steamer and the tow of a tug, resulting in injury to said tow, it appearing that the tug and steamer were both in fault, *held*, that a decree should be entered for the tow against both the tug and the steamer.

In Admiralty.

*H. R. Edmunds*, for libelant.

*Thos. Hart, Jr.*, for steamer Reading.

*Driver & Coulston*, for tug Smith.

BUTLER, J. On the 18th day of October, 1887, the libelant was being towed up the Delaware river by the tug Smith, and when about the fourth of a mile below Greenwich piers (which are on the western side of the

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

river) the steamer Reading appeared, near the same distance above, coming down. The Smith was probably a little closer to the western side of the channel than the Reading, but so nearly on the same course with the latter that it would have been necessary to change in passing. If no obstruction had been encountered, it would, therefore, have been her duty to run eastwardly of the Reading. Just at this time, however, a schooner was towed out from the piers and run across the channel. In this situation neither the Smith nor the Reading could safely turn eastward, and attempt to cross the schooner's bows. To continue their respective courses would certainly have resulted in one or the other, if not both, colliding with the schooner. If both turned westward, to pass under her stern, they would almost necessarily collide with each other. They should, therefore, have stopped, or endeavored to do so. Possibly the Smith could not have stopped, as the tide was running up. She could, however, have greatly diminished her speed,—reducing it to that of the tide. Indeed, I strongly incline to believe that the use of her anchors and those of the libelant, would have stopped her. The Reading certainly could have stopped. The tide was in her front and had she reversed and dropped her anchor, she would have stopped before reaching the point of collision. The Smith, instead of stopping, resolved to run westwardly, and endeavored to notify the Reading of her purpose, by blasts of her whistle. The latter vessel made no response, and the Smith, without further warning, turned westward. The Reading made a like turn at the same time, and, after passing the schooner's stern as close as possible, struck the libelant, (towed astern of the Smith,) and inflicted the damage complained of. That both vessels were in fault seems plain. The Smith was clearly wrong in turning westward without an answer to her signal, instead of stopping or endeavoring to do so, especially as she saw, or should have seen, that the Reading had turned in the same direction. The reason for her conduct is found in the testimony of her master. He supposed the Reading and schooner were lying still, —that neither was under way. This error could only arise from carelessness in the lookout. Even if it were true, as urged in her behalf, that the Smith was on a course westward of the Reading's, and had, therefore, a right to pass on that side, it was nevertheless her duty to endeavor to stop when she saw, or should have seen, that the Reading also had turned in that direction, instead of answering her signal. Admitting that the latter was wrong in turning westward, the Smith could find no justification in this for continuing her course, and running her tow in danger. The Reading was wrong, as we have seen, in failing to stop. She admits that it was her duty to stop, if possible, by the endeavor she has made to prove that she had tried to do so. Some of her witnesses say her engine was reversed. The distance she ran, however, against the tide, and the force of her blow in the collision, satisfy me that this testimony cannot be relied upon. If she had proposed to stop, and had found the reversal of her engines insufficient to accomplish her purpose, she would have dropped her anchors. Had she done so, there is no room to doubt that she would have stopped. In-

deed, I cannot doubt that the prompt reversal of her engine would, of itself, have stopped her. I think the testimony justifies a belief that she did not see the Smith and her tow, until she was almost immediately upon them, and did not, therefore, see any occasion for stopping. Had she seen them when the Smith signaled, she would doubtless have heard the signal, and answered, and have taken proper measures to avoid the collision. I think her attention was engrossed by the schooner directly in her front, and for want of a vigilant outlook failed to see the threatened danger below. However this may be, she should have stopped immediately upon the schooner and the Smith coming in view, and if the reversal of her engine was insufficient for this purpose she should have used anchors. She, also, therefore, is responsible for the injury inflicted. A decree must be entered for the libelant against both respondents.